Good afternoon, Your Honors. May it please the Court, my name is Ethan Preston. I represent Plaintiff Appellant John Lofton. This case... Would you mind moving your microphone up a little closer, please? Thank you. This case is on all fours with Armstrong v. Davis. Well, it's a private matter as opposed to the government. That's one reason it's not on all fours. The names are different, too, but when we look at what Armstrong v. Davis actually said about proving... How do you show a likelihood of irreparable injury recurring? And it gave you two methods. I have not found any case that would restrict Armstrong v. Davis to public litigation. You have two methods to prove continuing risk of recurring irreparable harm. You have a written policy. Verizon had a written policy which did not require disclosure of recording on these outgoing calls to wrong numbers. Because of that policy, my client's rights and the rights of other Californians were violated, the rights under the Invasion of Privacy Act. And you have Armstrong also talked about repeated violations. Well, we have clearly the scope of the call center operations here. We have repeated violations. We know that that happened not just once, not twice, but a lot of times. The courts, district court's order in this case depends entirely on a distinction between constitutional standing and irreparable harm or prudential mootness. That's a really significant distinction, isn't it, counsel? Well, it's interesting that you say that, Your Honor. Here's why I say it. When we look at irreparable harm or the likelihood of harm for purposes of standing, we're looking at the outset of the suit, right? Right at the beginning. It's a temporal distinction that I'm making. That's different. At this point, what's the strongest? What did the district court in this case have? What was their strongest indication that there was a risk that this harm would be repeated? The strongest risk of harm is that they didn't change the policy. It's not just they didn't change the policy when they were sued. They only changed the policy after discovery was served. Right. Saying, hey, have you guys changed your policy? Is this still the same policy? So for purposes of my hypothetical, I'm fine with assuming that the policy could be changed again. Absolutely. Which I don't really think is contested in this case. And so my question is, again, at the time this injunctive relief was requested, what's the strongest indication the district court had that there was a risk that the policy would be reversed? And again, I'm going to refer, Your Honor, to Armstrong, which talks about how I proved that. It gives me opportunities to prove that. And if you want to talk about other evidentiary facts, it's the timing of the change. They only changed the policy because the discovery was served. The distinction that we're drawing between constitutional standing and irreparable harm in this context, I'm going to suggest, is not that clear. Armstrong reads, system-wide injunctive relief, in the context of system-wide injunctive relief, issues of standing, class certification, and propriety and scope of injunctive relief are often intermingled. The neat distinction that's being drawn here between constitutional mootness and prudential mootness, it doesn't make a whole lot of sense. Why would you have a burden shifting for constitutional mootness? It gets people into court. But then if there's a voluntary cessation, they can't get relief. It doesn't make a sense. It leaves people stranded in court with no way to actually vindicate their rights. But we're talking about a preliminary injunction here. Indeed. And so, you know, you could lose a motion for preliminary injunction and get injunctive and declaratory relief later. True. I think that's hard to do. It's hard. I agree, but it's not impossible. Well, let's talk about that, because I've got an obligation to prove injunctive relief for both at the preliminary injunctive stage and at the final relief stage. I don't see a distinction between the two. I think my obligation is the same throughout the end of the case. So I don't have other options to achieve injunctive relief. So let's say you go to trial on this. The motion for preliminary injunction is the order is affirmed. You go to trial. What's your evidence? What evidence are you going to put on that would show the probability of future irreparable harm? I think I've discussed it, but it's the timing. You mean that's it? You mean what you have is on the table now? In theory, I guess I could take discovery has been fraught in this case, and I hesitate to really talk about what I think I could get and elicit from the defendants in this case. That would be pure speculation, really. Well, you see, there are two possibilities. I mean, sometimes people come on a preliminary injunction, and that's all there is, and then you can stipulate that the preliminary is the same as the final. Then your answer to Judge Thomas's question would be, well, there's no point in going to trial. I've put on everything I have. And then, you know, it's either enough for an injunction or it isn't. Or, as in most cases, after a preliminary, you go to trial. And then you're not bound by the results of the preliminary because you put on evidence, and that changes the issues. What evidence do you need then? I have no idea what your evidence will be. No, no, no, no, no, no. That's not the question, Your Honor. You've got discovery. I assume you haven't done much discovery yet. You've done some. Let me ask you this. Has the discovery deadline closed? No, it has not. Do you anticipate further discovery? Yeah. We have a motion for sanctions pending Thursday. There's been problems. Discovery sanction? Yes, ma'am. You filed the motion? There's, as I said, there's been problems. Look, this Court has given guidance about how do you go about proving a likelihood of continuing or recurring irreparable harm. The guidance is Armstrong. Right. But there is a distinction in Armstrong in this case because Armstrong is primarily concerned with constitutional standing. And that's different from satisfying the winner test. I appreciate your argument when you say you're out of court, have no recourse, if we're talking about Armstrong in constitutional standing. But when you say you have no recourse in the context of preliminary injunction, I see that differently. So if we don't have Armstrong, what method do private litigants have to prove a likelihood of recurring harm? And I've got to tell you, the only thing that I've found is Armstrong. And let's also consider the aspects of the brief where we talked about the difficulties. One, we have this is a hotly contested case and yada, yada, yada. I have to prove their state of mind, that they're likely to recur. If a defendant is clever enough to voluntarily cease violative conduct, they're also probably clever enough not to give you a whole lot of evidence that they intend to restart the conduct as soon as your case is over. Or maybe they don't intend to. That's the problem, right? There would have to be proof of that. Sometimes there's... That's why the burden of proof should be on them. How can that be for a preliminary injunction? I mean, the burden is on you on a preliminary injunction. I agree that the burden is on me to show the prima facie case. I believe I did that under Armstrong. If you guys are kicking Armstrong out from underneath me, I hope that you replace it with something else. But there's also the issue of the burden of persuasion in injunctive relief cases, on a motion for preliminary injunction. The allocation of the burden of proof remains the same as it does at trial. You have Gonzalez versus, and I'm going to mangle this name, of Centra Spirita, Supreme Court case, saying, yes, you have the burden of proving your affirmative defense on a preliminary injunction. And the same thing with Aguirre versus Chula Vista School District. So the allocation of the burden of proof remains the same. The question then becomes, how do you prove a likelihood of recurring irreparable harm? I submit, Your Honors, that you gave us a roadmap in Armstrong versus Davis. If you're not going to permit private litigants to take that roadmap, you're going to hamstrung private litigants to a degree that I think is not what you necessarily want to do. It seems ill-considered. In any event, I think Your Honors have possibly an obligation to come back and tell us, so what is the roadmap? How do you get there? Because you do have evidentiary problems. You're proving someone else's state of mind. And you can do that. You do that in fraud cases by circumstantial evidence. I would submit that that is what Armstrong is. My time is running out, and I'd like to reserve what I have. Do Your Honors have remaining questions for me? Well, we'll wait for your rebuttal. Yes, sir. Thank you, Your Honors. Charles Messer for the defendant in Appalachia, Verizon Wireless. The key distinction of Armstrong is that in Armstrong, the district court certified a class and could then consider the class member's potential claims for irreparable harm. In this case, no class has ever been certified. There's been no determination that Mr. Loftin's personal claims are typical or common to the claims of the injunctive relief class that he wants to represent. There's been no determination that he is an adequate class representative. And the class certification issue under Rule 23 is crucial to whether or not there is even a case or controversy between the class and Verizon Wireless, because the Supreme Court ruled in an Indianapolis school board case that until a class is certified, there is no case or controversy between the class and the defendant. So the plaintiff's references to alleged repeated recordings of others are not relevant to anything. And the district court properly focused on, what are Mr. Loftin's individual claims? What is the basis for his individual claim for injunctive relief? And when a plaintiff files a complaint and asserts claims not only for damages but also for injunctive relief, and then waits 19 months to file a motion for a plenary injunction, I think the courts can ---- But counsel, in fairness, his response to that is in the briefing, as you know. He said that he ---- that's his representation and that's what we've got, that discovery was really a hard-fought battle in this case. So I'm not sure that's going to be very helpful. Okay. Let's assume he's right. But that goes to the whether or not the class was injured, not to whether he himself had any realistic threat of imminent harm. And, for example, even the Armstrong case that he cites, pages 860 to 861, has some very cogent language that supports Verizon Wireless. Moreover, whereas here a plaintiff seeks prospective injunctive relief, he must demonstrate that he is realistically threatened by a repetition of the violation. Right. So his position, again, just to make sure that I get your ---- the benefit of your response. Sure. His position is that he was called more than once after telling, you know, asking that they stop calling. Yes. And that that continued and the policy was only changed after Verizon was sued and that it could be changed back. So what's your response to that? Well, a couple responses. The calls were on June 2 he called and was told, in fact, the calls were monitored or recorded. And then when he was called on June 4, he said, don't call me. June 7, he was called again. So those are those three calls. Right. He filed suit a week later, June 14, 2012. In August of 2012, he was provided a declaration of Craig Battinelli that had the Verizon policy that showed that, in fact, Verizon has a robust disclosure policy for its customers because all of its customers are going to have confidential private conversations. You know, this call may be monitored or recorded for quality purposes, but that long number calls would not have a disclosure. And that's his complaint. And that's part of our really strong disagreement with the trial courts ruling on the merits of this, that to impose statutory damages of $5,000 for a recording of this type when there's no invasion of privacy, no even allegation that Mr. Battinelli is a criminal, that's a plausible reading of the Act. But that aside, getting to your question, he learned in August 2012 about the old policy that he claims is unlawful. And yet, when a plaintiff files a case for injunctive relief, you would expect a fairly prompt motion, at least on behalf of himself, saying, look, Your Honor, I think that there's an imminent threat of irreparable harm. Okay. So he delayed, and that's part of the hypothetical that I'm asking you to respond to, whether it was because of a discovery battle or whatever it was, there was a delay. His position is that the policy could be changed right back, that Verizon only changed it because it was sued, and that it could be changed right back. I'm just looking for your response to that. The policy was changed after the Superior Court ruled that the service-observing exception did not apply and that the policy was potentially unlawful. And there are no cases out of the Courts of Appeal or California Supreme Court. This is an unsettled area of law, and it really depends on future developments out of the California appellate courts or the California Supreme Court as to whether the policy was changed back. So are you going to continue to oppose it? I'm sorry? Are you going to continue to litigate the matter, then? Is that what you're telling us? You lost. Are you going to keep litigating it so you can change the rule? Is that what your position is today? We will not change the rule unless there's a clarification of the law in our favor of it. Let me say that.  And so are you going to keep litigating the issue? Oh, yes. We will. So if you win, then you will change it back? Could. Well, it seems like you're – he's got a case, then. That might change things. My earlier hypothetical posited that it seemed to me that what defense or a plaintiff has shown is that Verizon got sued, Verizon changed the policy, and there wasn't any reason to think that Verizon wanted to change it back. If Verizon is litigating this, going to Judge Thomas's question, it sounds to me like Verizon wants to change it back. Verizon does not want to face a liability or a class-at or a class-wide liability on these kinds of claims. But it's going to keep litigating this? The other choice is what? It's not a trick question. I just want to make sure that I understand the landscape. But you would like to be able to have the policy back, right? The one that you abandoned? Verizon Wireless wants to have a policy that complies with California law. A policy of what? We want to have a policy that complies with California law. Well, what would you do if the California appellate court said it was okay? Would you immediately go back? I don't know. I don't know, Your Honor. I'm outside counsel. I don't know. Well, that's the unknown. Well, it's a known unknown, I suppose. But you can appreciate the argument, because in voluntary cessation cases, a lot of times litigants will say, look, we are not going back. We've changed our policy. And then you gauge the potential. Could they change back the policy with what they're saying? If I understand what you're saying, your argument is, look, the state court ruled we feel we might be at risk. We're changing our policy. But if the state goes in a different direction, we're going to go back, or that there's a likelihood. We may. But also, I think there's an undue emphasis, Franklin, on the voluntary cessation argument, because the test on appeal should be, are there facts in the record to support the district court's determination. And there are ample facts to say that there was no imminent threat of irreparable harm to Mr. Loftin, based on facts independent of the policy. The old policy was in effect until March of 2013. He was not called again. He didn't allege that there was a threat that he would be called again. And there's evidence that Colecto blocked his telephone number and that Verizon Wireless terminated the contract of Colecto and that Verizon Wireless has no motive to call. It wasn't even trying to call Loftin. It was trying to call a customer named KB. So there is independent evidence in the record that supports the district court's ruling. And, you know, it's always possible for an appellant to cherry pick a record and say, well, I can select a record that could possibly support a different result. But I don't think that that is the rule on review of a ruling on preliminary injunction. Particularly a factual finding, is there a imminent threat of irreparable harm to the named plaintiff? I take your point. Let me ask you another question. That's provoked by one of your prior responses. I gather that from your response that Verizon has only changed this policy as to the state of California and nowhere else in the nation. No, it's national. So would you explain your prior answer when you said you want to carve out for California? Well, actually, you see, that's actually an excellent point I had not thought of. Because I'm skeptical that they would ever have state-by-state policies because the company is too big and it's too unmanageable. And so actually, now that you point that out, Your Honor, I would say it may be very unwieldy to change because the company does not have state-specific policies on this. Right. And about 35 states are two-party states. I take your answer, but what did you mean earlier when you said that you wanted to carve out for California? I don't want to carve out. I did not mean to say that we wanted to carve out for California. My question was are we going to get the question to me that I was trying to answer in a forthright way is are we going to continue to litigate the issue of whether or not the old policy violated the California Act. The answer is yes. Yes. And then perhaps you spoke too hastily, but I thought your other answer was we want the law just to apply to California and nowhere else. Well, we want to – what we hope is that the California courts construe the Invasion of Privacy Act in the way that we believe that it's intended to really protect the tangible privacy rights, not these wrong number calls or a call to my son who answers my cell phone and my son hands it to me and this call may be monitored or recorded and now he has a claim for $5,000 under the act. We don't think that's plausible reading, but that's the class. But the point of – but Justice Thomas, I think your point about the state-specific nature is an excellent one because the policies are national. And so even if – and so even if my dream comes true and I win this case on liability in California, I'm skeptical that that will cause a change in the national policy because it's just – it's not how Verizon does it. And there are a lot of other states with similar statutes. Is that in the record? I'm sorry? Is that in the record, that point? And maybe we've taken you afield here, but that this would be – this would be national policy, not a state-specific policy. Do we have that anywhere? It is in my 12B6 motion to dismiss. Thank you. And absent any other questions, Your Honor, I will submit. Thank you, counsel. Thank you. I know, Your Honor, if you have questions, I'd like to address a couple of questions. A couple of points first. Verizon puts great weight on Mr. Loftin's personal interest in a disclosure. I'm going to suggest the nature of the interest here, where it's an undisclosed recording. When a call to a wrong number, most of those people are not going to know that they've been injured. Well, I accept your point, but the class hasn't been certified yet, so we just have to look at him, don't we? Well, you have Hawkins v. Kemper Kasani, which talks about when you have a class membership that's so inherently transitory that there's not enough time to move for class certification before the class rep's personal interest expires. And I submit to you that's what's happened here, in part because of the discovery problems that we've run into. We couldn't move. We still haven't been able to move for class certification. I don't know if it helps to submit the motion for sanctions that kind of goes through the problems we've had with class certification discovery, but it's been tremendous. It has been a hard-fought hammer-and-tongue battle. If you have that situation, it falls within the capable-of-repetition-yet-evading-review exception. To standing. To standing. Yeah. Do you have anything with respect to your client alone that would indicate that he is in imminent danger of this reoccurring, other than what you have in your brief? Sure. Look, he has this number that has been skip-traced several times. He's gotten other calls from other people. It is possible that somebody skip-traces the person they're trying to find and pulls up with his number again. That could happen. It happened before. It could happen again. We know there's been other people calling for that individual. That's not on the record because, again, I thought I could rely on Armstrong versus Davis. But that tells me that your client has a cell phone number that used to belong to somebody who doesn't pay his bills. I'm not even sure. It doesn't tell me that Verizon is likely to reinstitute its policy, does it? It doesn't relate to its specific policy. That's true. The only people who can tell you whether or not Verizon is going to revert its policy is Verizon. Let's assume for the sake of argument that Verizon does change its policy back. Your client is not a Verizon customer, so what is the likelihood of irreparable harm to him in the future? They called him once. They can certainly skip-trace his number and call him again. What's more, it's a class action. You have to consider not just him. But, look, if you just focus on his relief, there is no class representative. And if there's no class representative, there's no injunctive relief for all the other people that they're going to call, all the other wrong numbers they're going to call. It's a massive call center operation operated with something like 27 different debt collectors. Is your position that the district court was required to consider these folks who aren't yet in this uncertified class? At the time, she was looking at whether your client had satisfied the winter factors, or is she supposed to look at your client's claim? I think she has to look at everybody's claim because it's a class action. If I may, one of the other things that we've talked about in the briefs is that there is an abuse of discretion if you fail to consider all the pertinent factors. Parker Davis and Cora Corp and all those other cases where they counsel district courts, look, don't presume that a voluntary change in policy means that the case is over. It means that there's no more need for injunctive relief. You have to look at the timing and the motivation. And I would suggest if you look at those cases, they set a standard where you have to look at the motivation, and that wasn't done here, or if it was done, there's not sufficient record to show that it was done. And for those reasons, there is a separate grounds for reversal. Do you have any case that says whether it is proper, that it is proper to consider the other members of the future class when there has not yet been a class? I think that's Hawkins versus Kambarakisani, where, you know, the idea is if you have a class, and Hawkins was pretrial detention where nobody stays in that situation for very long. And so the idea is if you're only in pretrial detention for a day or an hour, there's no way to give relief to those people. You have to have, consider some way to give relief to those people. And that's the issue that we're dealing with here. A lot of these people aren't going to know that they were recorded. Your Honors, oh, I've got a little bit more time. If you don't provide some way forward, there is no means for anyone to plausibly achieve injunctive relief, which is a primary goal of this litigation, to stop these people from going to jail. And if you don't provide some way forward, there is no means for anyone to plausibly achieve injunctive relief,  And if you don't provide some way forward, there is no means for anyone to plausibly achieve injunctive relief, to violate the law. I'm going to suggest to you that's not the jurisprudence we want to have. We want to be able to stop people who violate the law. Thank you, Counselor. Thank you, Your Honors. The case as argued will be submitted.
judges: Reinhardt, Thomas, Christen